UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL TOLLEN, on behalf of himself and a class of similarly situated investors,<br><br>    Plaintiff,<br><br>  v.<br><br>GERON CORPORATION and JOHN A. SCARLETT,<br><br>    Defendants. | No. C 20-00547 WHA<br><br>*Related to*<br><br>No. C 20-01163 WHA<br><br>**ORDER (1) CONSOLIDATING ACTIONS; (2) APPOINTING LEAD PLAINTIFF; AND (3) INVITING APPLICATIONS FOR LEAD COUNSEL** |
| EUGENE CONNOR, on behalf of himself and a class of similarly situated investors,<br><br>    Plaintiff,<br><br>  v.<br><br>GERON CORPORATION and JOHN A. SCARLETT,<br><br>    Defendants. | |

**INTRODUCTION**

Pursuant to the Private Securities Litigation Reform Act, this order **APPOINTS** Julia and Richard Junge as lead plaintiffs. This order accordingly **DENIES** the motions of other parties

for appointment as lead plaintiff. This order also **GRANTS** the motion to consolidate cases and sets forth the procedure to be used for the selection and approval of class counsel.

**STATEMENT**

On January 23, 2020, individual investor Michael Tollen filed a putative securities action against defendant Geron Corporation and individual defendant John Scarlett, the President and CEO of Geron, alleging false and misleading statements in violation of federal securities laws. That same day, Tollen's counsel published a notice on PRNewswire informing investors that a class action lawsuit had been filed against Geron and that investors had 60 days from the publication of the notice to seek appointment as lead plaintiff. A second such class action was filed in this district by individual Eugene Connor on February 14, 2020, and was later related by this Court.

Plaintiff alleges Geron misled investors regarding a drug called imetelstat and its corresponding clinical study, IMbark. Geron allegedly chose to cite certain positive metrics regarding the studies of the drug during an investor call and in its financial statements that caused its stock price to increase, as opposed to citing primary endpoint data or other less positive metrics that would have helped investors evaluate the true viability of the drug. When Geron finally announced the drug's failure and the corresponding data, its stock price dropped.

Eight lead plaintiff candidates timely filed motions for appointment: (1) Tak Wing Yuen, (2) Timothy Willison and Thomas Cooper, (3) Patricia Markham, (4) Kevin Courtney, (5) Dr. Robert Ham, (6) Trevor Conti (7) Julia Junge and Richard Junge, and (8) Stuart Gaumer. Patricia Markham, Trevor Conti, Stuart Gaumer, Kevin Courtney, and Timothy Willison and Thomas Cooper have all withdrawn their motions. Tak Wing Yuen has filed a statement of non-opposition. Thus, Dr. Robert Ham as well as Julia and Richard Junge remain.

The undersigned requested that each lead plaintiff candidate file responses to a questionnaire about his or her qualifications, experience in managing litigation, transactions in the shares at issue, and any potential conflicts related to the instant securities litigation. Dr. Ham and the Junges have submitted answers to the lead plaintiff questionnaire. A telephonic hearing on the appointment of lead plaintiff was held on April 30 and both the Junges and Dr.

Ham were questioned on their qualifications. Following the hearing on the same day, an order requested additional information from the movants. In response, the Junges filed two handwritten questionnaires and a joint declaration. Dr. Ham filed an opposition to the Junges' filing.

**ANALYSIS**

1. **CONSOLIDATION.**

Under FRCP 42(a), the district court may consolidate actions where the actions involve a "common question of law or fact." The "district court has broad discretion under this rule to consolidate cases pending in the same district." *Investors Research Co. v. U.S. Dist. Court for Cent. Dist. of Cal.*, 877 F.2d 777, 777 (9th Cir. 1989). The complaints do not need to be identical for purposes of consolidation.

Here, both complaints allege claims under Section 10(b), 20(a) of the 1934 Exchange Act as well as Rule 10b-5, and include allegations regarding Geron's announcements of certain metrics regarding imetelstat and IMbark. The complaints also share the same class period. Because the complaints involve common questions of fact and law, the motion to consolidate is **GRANTED**.

2. **APPOINTMENT OF LEAD PLAINTIFF.**

Under the PSLRA, the district court "shall appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of the class members . . . in accordance with this subparagraph." 15 U.S.C. § 78u-4(a)(3)(B)(i); 15 U.S.C. § 77z-1(a)(3)(B)(i). The PSLRA creates a rebuttable presumption that the most adequate plaintiff should be the plaintiff who: (1) has filed the complaint or brought the motion for appointment of lead counsel in response to the publication of notice; (2) has the "largest financial interest" in the relief sought by the class; and (3) otherwise satisfies the requirements of FRCP 23. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(aa)–(cc); 15 U.S.C. § 77z-1(a)(3)(B)(iii)(I)(aa)–(cc). The above presumption may be rebutted only upon proof that the presumptive lead plaintiff: (1) will not fairly and adequately protect the interests of the class; or (2) is subject to "unique defenses" that render

3

1  such plaintiff incapable of adequately representing the class.  15 U.S.C. § 78u-
2  4(a)(3)(B)(iii)(II)(aa)–(bb); 15 U.S.C. § 77z-1(a)(3)(B)(iii)(II)(aa)–(bb).

The PSLRA establishes a three-step inquiry for appointing a lead plaintiff.  *First*, a plaintiff files the action and posts notice, allowing other lead plaintiff candidates to file motions.  *Second*, the district court considers which of those plaintiffs has the largest financial interest in the action and whether that plaintiff meets the requirements of FRCP 23.  *Third*, other candidates have the opportunity to rebut the presumption that the putative lead plaintiff can adequately represent the class and to compete themselves for the job.  *In re Cavanaugh*, 306 F.3d 726, 729–30 (9th Cir. 2002).

### A.  LARGEST FINANCIAL INTEREST.

The PSLRA does not indicate a specific method for calculating which plaintiff has the "largest financial interest."  *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb).  Our court of appeals also has not prescribed a particular method for calculating a plaintiff's financial interest but has directed that "the court may select accounting methods that are both rational and consistently applied."  *In re Cavanaugh*, 306 F.3d at 730 n.4.

Here, the movants calculate financial interest based on the losses suffered.  Under this test, courts consider: "(1) the number of shares purchased during the class period; (2) the number of net shares purchased during the class period; (3) the total net funds expended during the class period; and (4) the approximate losses suffered during the class period."  *In re Diamond Foods, Inc., Sec. Litig.*, 281 F.R.D. 405, 408 (N.D. Cal. 2012).  The fourth factor, the net "approximate loss," is generally considered the most important factor.  Absent proof that the lead plaintiff candidate with the largest financial interest does not satisfy the requirements of FRCP 23, said candidate is "entitled to lead plaintiff status."  *In re Cavanaugh*, 306 F.3d at 732.

The Junges purchased 148,336 shares during the class period and suffered an estimated net loss of $457,253.74 calculated under both LIFO and FIFO.  Dr. Ham purchased 405,403 shares during the class period and suffered an estimated net loss of $282,994.39 calculated under both LIFO and FIFO.  Because the Junges have shown that they have the largest

United States District Court
Northern District of California

financial interest within the meaning of the statute, they are presumptively the most adequate lead plaintiff.

### B.  REQUIREMENTS OF TYPICALITY AND ADEQUACY UNDER RULE 23.

Once a court determines which plaintiff has the largest financial interest, "the court must appoint that plaintiff as lead, unless it finds that [plaintiff] does not satisfy the typicality or adequacy requirements." *In re Cavanaugh*, 306 F.3d at 732.

The typicality requirement is satisfied when the putative lead plaintiff has suffered the same injuries as absent class members as a result of the same conduct by the defendants. *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992). In the instant action, the alleged announcement of certain imetelstat and IMbark metrics during the class period and the drug's subsequent failure caused the Junges as well as Dr. Ham and absent class members alike to suffer financial loss. As a result, the Junges claims are based on the same legal theories as other class members. Dr. Ham's claims are also based on the same legal theories as the other class members.

The adequacy requirement of FRCP 23(a)(4) permits certification only if "the representative parties will fairly and adequately protect the interests of the class." The two key inquiries are (1) whether there are conflicts within the class; and (2) whether plaintiff a counsel will vigorously fulfill their duties to the class. *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 985 (9th Cir. 2011). In its response to the lead plaintiff questionnaire, the Junges state that they have never been lead plaintiff in a case nor do they have any experience with litigation. They are, however, willing to travel as needed to carry out the lead plaintiff responsibilities. Similarly, Dr. Ham has never been lead plaintiff in a case and does not have litigation experience. He, too, asserts that there are no time or travel impediments to carrying out his responsibilities as lead plaintiff in this action.

### C.  ATTEMPTS TO REBUT PRESUMPTION.

Dr. Ham opposes the appointment of the Junges as lead plaintiff on three grounds. *First,* he argues that the Junges have failed to make a *prima facie* evidentiary showing of their

5

1    adequacy.  Specifically, although their counsel submitted a declaration, the Junges themselves
2    did not initially submit a declaration regarding their background or adequacy to serve as lead
3    plaintiff or setting forth facts concerning their relationship with each other.  *Second,* Dr. Ham
4    argues that without a declaration, the Junges are inadequate because they may be "two investors
5    with no decision-making structure."  *Third,* Dr. Ham notes a number of deficiencies in the Junges'
6    response to the Court's questionnaire that make them an inadequate lead plaintiff.

7        In support of his arguments, Dr. Ham has cited to cases from other district courts that
8    have denied applications for appointment as lead plaintiff on the ground that the lead plaintiff
9    candidate did not, for example, provide evidence of his competency or basic details about
10   himself.  *See, e.g., Camp v. Qualcomm Inc.,* 2019 WL 277360, at *3 (S.D. Cal. Jan. 22, 2019);
11   *In re Gemstar-TV Guide Int'l, Inc. Sec. Litig.*, 209 F.R.D. 447, 452 (C.D. Cal. 2002).

12       Initially, the Junges only submitted a declaration from counsel, not one signed by
13   themselves.  They have now submitted a joint signed declaration in response to the April 30
14   order.  The declaration includes, among other things, detailed information about their
15   educational background, employment, and their investment in Geron.  Thus, unlike the lead
16   plaintiff candidates in the above-mentioned cases who provided little to no information about
17   themselves, the Junges have provided sufficient background information, thereby addressing
18   this concern as to their adequacy as lead plaintiff.

19       Dr. Ham also argues that the Junges have failed to make a *prima facie* showing of their
20   adequacy because they did not initially submit a signed declaration.  Dr. Ham further contends
21   that any subsequent declarations submitted are inadequate under 15 U.S.C. § 78u-4(a)(3).  The
22   PSLRA sections Dr. Ham cites to require a lead plaintiff candidate to move the court to serve
23   as lead plaintiff within 60 days of notice publication.  Here, even though the Junges' timely
24   motion was not accompanied by their signed declaration, the new declaration submitted in
25   response to the April 30 order is sufficient at this stage to make a *prima facie* showing as to
26   their adequacy.  There is no case law stating that a signed supplemental response submitted
27   after the 60-day period delineated by the PSLRA belies the legitimacy or timeliness of the
28   questionnaire, declaration, or of the related motion.  This order, nonetheless, still notes a

6

1    concern that the Junges failed to initially submit their owned signed declaration with their
2    motion and did not do so until the Court provided a second chance.
3        As to Dr. Ham's second concern, it is true we tend to be skeptical about "artificial"
4    groups even though more than one person can be appointed as lead plaintiff.  *In re Network*
5    *Assocs., Inc., Sec. Litig.*, 76 F. Supp. 2d 1017, 1027 (N.D. Cal. 1999).  The issue with
6    appointing a disparate, unrelated group is that it would encourage lawyers to direct the litigation, as
7    opposed to allowing plaintiffs to seek out the lawyers as the PSLRA intended.  *See* H.R. Conf
8    Rep. No. 104–369, at 35 (1995).  In this case, however, in their motion and declaration, the
9    Junges explained their relationship as husband and wife.  They are not unrelated investors
10   without a connection other than counsel.
11       As to his third concern, Dr. Ham points to a number of shortcomings with the Junges'
12   questionnaire response.  In particular, Dr. Ham notes that the original questionnaire submitted
13   by the Junges was not written in Julia or Richard's own handwriting as directed by the Court
14   and that the response was prepared with assistance of counsel.  One of the purposes of the
15   PSLRA is to prevent lawyer-driven litigation, and to ensure that the lead plaintiff is the one
16   who actively manages the litigation on behalf of the class, not counsel.  The original
17   shortcomings pointed out by Dr. Ham — a typewritten questionnaire response and reliance on
18   counsel — do cast some doubt on whether the Junges understood that lawyers should not be
19   directing this litigation.  The Junges have now, however, submitted new handwritten responses
20   to the questionnaire.  Their joint declaration also states that they understand "the lead plaintiff
21   shall have the authority and responsibility to manage the case and to direct lead counsel."
22   Combined with the statements made by the Junges and the directions given during the April 30
23   hearing, the Court is satisfied that the Junges understand what their duties would be in
24   managing the litigation as lead plaintiff, and the importance of preventing lawyer-controlled
25   litigation in this matter.
26       Dr. Ham also notes that the initial questionnaire response did not address how the Junges
27   would manage the litigation with Richard in Texas and Julia in Alaska for part of the year on a
28   contract assignment.  There is, however, such a thing as the telephone.  The initial response

1    also did not address counsel's agreement with the Junges that it would advance all reasonable

2    costs and expenses in this litigation, even if there is no recovery.  Based on the Junges' updated

3    declaration noting their "long-standing cooperation and joint decision-making as a married

4    couple" as well as further questioning by the Court of their ability to manage the litigation at

5    the April 30 hearing, this order finds the Junges have satisfied the requirements of typicality

6    and adequacy.  Accordingly, Julia Junge and Richard Junge are hereby **APPOINTED** as lead

7    plaintiff.

8        The Court appreciates Dr. Ham's assistance in evaluating the Junges.  Dr. Ham may be

9    correct that the Junges are mere puppets of their lawyers.  If this pattern persists, we will

10   reevaluate their suitability as lead plaintiff.  In the meantime, the Court reminds the Junges that

11   they must, on their own, interview and select counsel who will do the best job for the class,

12   taking into account all the required factors, including capping his fee request.  Further details

13   regarding selecting counsel are below.

### INSTRUCTIONS TO JULIA AND RICHARD JUNGE

15       Julia and Richard Junge are hereby appointed lead plaintiff.  The following sets forth the

16   procedure for selecting and approving class counsel.  Under the PSLRA, "[t]he most adequate

17   plaintiff shall, subject to the approval of the court, select and retain counsel to represent the

18   class."  15 U.S.C. § 78u-4(a)(3)(B)(v).  Selection and approval require an assessment of the

19   strengths, weaknesses, and experience of counsel as well as the financial burden — in terms of

20   fees and costs — on the class.  *Wenderhold v. Cylink Corp.*, 191 F.R.D. 600, 602–03 (N.D.

21   Cal. February 4, 2000) (Judge Vaughn R. Walker).

22       Any important decision made by a fiduciary should be preceded by due diligence.  A lead

23   plaintiff is a fiduciary for the investor class.  No decision by the lead plaintiff is more

24   important than the selection of class counsel.  Consequently, the lead plaintiff should precede

25   its choice with due diligence.  The extent of such due diligence is a matter of judgment and

26   reasonableness based on the facts and circumstances.

27       The lead plaintiff may consider its current counsel along with all other candidates but it

28   may not give current counsel any special preference.  Considerations should include each

United States District Court
Northern District of California

1  candidate's fee proposal, its track record, the particular lawyers to be assigned to the case, the

2  candidate's ability and willingness to finance the case, the candidate's proposals for the

3  prosecution of the case, and the factors set forth in the questionnaire.

4      The lead plaintiff should immediately proceed to perform its due diligence in the

5  selection of class counsel, and to interview appropriate candidates.  Counsel wishing to apply

6  to be considered for the role of lead counsel should promptly contact Julia and Richard Junge

7  at:

    18102 Talavera Ridge, Apt. 2401
    San Antonio, TX 78257
    Telephone: (405) 317-6580
    Email: jjunge@ymail.com

    Julia and Richard Junge shall promptly advertise for applicants and leave open the application period for class counsel until **JUNE 5, 2020**, and shall make a final decision as to the selection of counsel by **JUNE 19, 2020**.  Both Junges must interview and evaluate all candidates.  Through counsel, Julia and Richard Junge shall move for the appointment and approval of their selected counsel no later than **JULY 9, 2020**.  The motion should be accompanied by a declaration from the lead plaintiff explaining the due diligence undertaken with respect to the selection of class counsel.  The declaration should also explain why the counsel selected was favored over other potential candidates.  The declaration should be filed under seal and not served on defendants.  The motion for approval of lead plaintiff's choice of counsel, however, should be served on defense counsel.  No hearing will be held on the motion unless the Court determines that it would be beneficial.

**IT IS SO ORDERED.**

Dated:  May 14, 2020.

                                            WILLIAM ALSUP
                                            UNITED STATES DISTRICT JUDGE