**KAPLAN FOX & KILSHEIMER LLP**
Laurence D. King (SBN 206423)
Kathleen A. Herkenhoff (SBN 168562)
Blair E. Reed (SBN 316791)
1999 Harrison Street, Suite 1560
Oakland, CA 94612
Telephone: (415) 772-4700
Facsimile: (415) 772-4707
*lking@kaplanfox.com*
*kherkenhoff@kaplanfox.com*
*breed@kaplanfox.com*

**KAPLAN FOX & KILSHEIMER LLP**
Robert N. Kaplan (admitted *pro hac vice*)
Jeffrey P. Campisi (admitted *pro hac vice*)
Jason A. Uris (admitted *pro hac vice*)
850 Third Avenue, 14th Floor
New York, NY 10022
Telephone:  (212) 687-1980
Facsimile:  (212) 687-7714
*rkaplan@kaplanfox.com*
*jcampisi@kaplanfox.com*
*juris@kaplanfox.com*

*Class Counsel for Lead Plaintiffs Julia Junge and
Richard Junge and the Class*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

| | |
|---|---|
| JULIA JUNGE and RICHARD JUNGE, on behalf of themselves and a class of similarly situated investors,<br><br>Plaintiffs,<br><br>v.<br><br>GERON CORPORATION and JOHN A. SCARLETT,<br><br>Defendants. | Case No. 3:20-cv-00547-WHA (DMR)<br><br>Class Action<br><br>(Consolidated with Case No. 3:20-cv-01163-WHA)<br><br>(Related to Case No. 3:20-cv-02823-WHA; 3:22-mc-80051-WHA)<br><br>**NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF SETTLEMENT AND PLAN OF ALLOCATION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Judge: Hon. William H. Alsup<br>Courtroom: 12, 19th Floor<br>Date:  March 30, 2023<br>Time: 11:00 a.m. |

## NOTICE OF MOTION AND MOTION

**TO ALL PARTIES AND THEIR RESPECTIVE ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that, pursuant to Rule 23 of the Federal Rules of Civil Procedure and the Court's October 13, 2022 Minute Entry for Proceedings (ECF No. 253) (the "Preliminary Approval Order") preliminarily approving the September 2, 2022 Stipulation and Agreement of Settlement (the "Stipulation" or "Settlement")[1] as fair, reasonable, and adequate to the members of the Class certified in this Action (*see also* ECF Nos. 259 and 257 (Preliminary Approval hearing transcript) at 29:7-13), Lead and Class Counsel Kaplan Fox & Kilsheimer LLP ("Lead Counsel" or "Kaplan Fox") in the above-captioned securities class action (the "Action"), on behalf of Lead Plaintiffs Julia Junge and Richard Junge (the "Lead Plaintiffs") and the Class certified in the Action, will and hereby do move (the "Motion for Final Approval") the Court, before the Honorable William Alsup, on March 30, 2023, at 11:00 a.m. in Courtroom 12 of the United States District Court for the Northern District of California, 450 Golden Gate Avenue, San Francisco, CA 94102, or at such other location and time as set by the Court, for an Order granting final approval of the Settlement, approving the proposed plan of allocation set forth in the Stipulation, finding that the notice to the Class in the manner directed in the Preliminary Approval Order and the Order Setting Schedule in Advance of March 30, 2023 Fairness Hearing (ECF No. 259) ("Scheduling Order") constituted the best notice practicable and provided notice consistent with Fed. R. Civ. P. Rule 23 and due process and the requirements of the Private Securities Litigation Reform Act of 1995 ("PSLRA"), and directing the entry of judgment in the Action pursuant to the terms of the Settlement in the Action.

This Motion for Final Approval is based on the Stipulation, the Memorandum of Points and Authorities, the accompanying Declaration of Jeffrey P. Campisi in Support of: (A) Lead Plaintiffs' Motion for Final Approval of Settlement and Plan of Allocation; and (B) Lead Counsel's Motion

---

[1] Unless otherwise defined herein, all capitalized terms have the same meaning as set forth in the Stipulation, which is filed on the docket in the Action as ECF No. 247.  Unless otherwise noted, citations to "ECF No. __" are to docket entries in Case No. 3:20-cv-00547-WHA.  When citing ECF documents, the pagination is to the page number set forth on the original document prior to ECF filing.  Unless otherwise indicated herein, all footnotes and quotations are omitted, and all emphasis is added.

for an Award of Attorneys' Fees, Reimbursement of Litigation Expenses, and Awards to Lead Plaintiffs for Lost Wages under 15 U.S.C. § 78u-4(a)(4), dated February 2, 2023 ("Campisi Declaration" or "Campisi Decl.") and its exhibits, including the declaration submitted on behalf of Epiq Class Action and Claims Solutions, Inc. ("Epiq"), the Court-appointed Claims Administrator (Declaration of Jessie Mahn Regarding: (1) Mailing of Settlement Notice and Proof of Claim and Release Form; (II) Publication of Summary Settlement Notice; (III) Call Center Services; (IV) the Settlement Website; and (V) Requests for Exclusion, Objections and Claims Received to Date (the "Mahn Decl." or "Mahn Declaration"), dated February 2, 2023), the filings in connection with the Preliminary Approval Motion (ECF No. 248), the Preliminary Approval Order (ECF No. 253), the Scheduling Order, the transcript of the hearing on the Preliminary Approval Motion (ECF No. 257), all other prior pleadings and papers on file in the Action, arguments of counsel, the proposed Judgment Approving Class Action Settlement to be filed in support of the Motion for Final Approval,[2] and such additional information or argument as may be required or permitted by the Court.

### STATEMENT OF ISSUES TO BE DECIDED

1.      Whether the Court should approve the Settlement of the Action as fair, reasonable, and adequate under Rule 23(e)(2).

2.      Whether the Court should approve the Plan of Allocation as it is fair, reasonable, and adequate.

3.      Whether the notice to the Class in the manner directed by the Court in the Preliminary Approval Order and the Scheduling Order, as set forth in the Mahn Declaration, was

---

[2] Lead Plaintiffs submitted a [Proposed] Judgment Approving Class Action Settlement as an exhibit to the Stipulation, which contemplates identifying members of the Class who have sought to be excluded from the Class. *See* ECF No. 247-5 (Appendix 1).  After the March 9, 2023 deadline for Class members to submit requests for exclusion to the Claims Administrator, Lead Plaintiffs will update the proposed judgment to identify the members of the Class who have timely sought to be excluded, and submit it to the Court before the Settlement Fairness Hearing on March 30, 2023. Similarly, proposed orders approving the Plan of Allocation and any order related to the separately filed Motion for an Award of Attorneys' Fees, Reimbursement of Litigation Expenses and Awards to Lead Plaintiffs for Lost Wages under 15 U.S.C. §78u-4(a)(4) will submitted in advance of the Settlement Fairness Hearing to permit incorporation of any further orders of this Court issued in advance of the hearing.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

the best notice practicable and provided notice of the Settlement to the Class consistent with Fed.

R. Civ. P. Rule 23 and due process, and the PSLRA.

**TABLE OF CONTENTS**

Page

MEMORANDUM OF POINTS AND AUTHORITIES ................................................................. 1

PRELIMINARY STATEMENT ................................................................................................... 1

SUMMARY OF THE LITIGATION ........................................................................................... 3

ARGUMENT ............................................................................................................................... 3

I.      The Proposed Settlement Warrants Final Approval ........................................................... 3

     A.      Lead Plaintiffs Have Adequately Represented the Class ....................................... 5

     B.      The Settlement Was Reached After Substantial Discovery, Arm's- Length Negotiations Between Experienced Counsel, and Two Settlement Conferences with an Experienced Magistrate Judge Serving as the Mediator ................................................................................................................ 6

     C.      The Relief that the Settlement Provides for the Class Is Adequate, Taking into Account the Costs and Risks of Further Litigation and All Other Relevant Factors ...................................................................................................... 8

         1.      The Amount of the Proposed Settlement ................................................... 8

         2.      The Strengths and Weaknesses of Lead Plaintiffs' Action and the Significant Risks of Continued Litigation ................................................ 10

         3.      The Duration and Costs of Continued Litigation ..................................... 13

         4.      All Other Factors in Rule 23(e)(2)(C) Support Approval of the Settlement ................................................................................................ 14

     D.      The Settlement Treats Class Members Equitably .................................................. 16

     E.      Additional Factors Considered by the Ninth Circuit Support Approval of the Settlement ...................................................................................................... 16

II.      The Plan of Allocation Is Fair and Reasonable ............................................................... 18

III.      Notice to the Class Satisfied the Requirements of Rule 23 and Due Process .................. 20

CONCLUSION ........................................................................................................................... 22

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ching v. Siemens Indus., Inc.*,
No. C 11-4838 MEJ, 2013 WL 6200190 (N.D. Cal. Nov. 27, 2013) ...................................... 20

*Churchill Village L.L.C. v. Gen. Elec.*,
361 F.3d 566 (9th Cir. 2004).................................................................................... *passim*

*Class Plaintiffs v. City of Seattle*,
955 F.2d 1268 (9th Cir. 1992)........................................................................................ 5, 18

*Destefano v. Zynga, Inc.*,
2016 WL 537946 (N.D. Cal. Feb. 11, 2016) ............................................................... 8, 13, 21

*Fleming v. Impax Lab's Inc.*,
No. 16-CV-06557-HSG, 2022 WL 2789496 (N.D. Cal. July 15, 2022) ................................. 10

*Freitas v. Cricket Wireless, LLC*,
No. C 19-07270 WHA, 2022 WL 3018061 (N.D. Cal. July 29, 2022) ................................... 13

*Garner v. State Farm Mut. Auto. Ins. Co.*,
No. CV 08 1365 CW (EMC), 2010 WL 1687832 (N.D. Cal. Apr. 22, 2010) .......................... 4

*Hanlon v. Chrysler Corp.*,
150 F.3d 1011 (9th Cir. 1998)..................................................................................... 4, 5, 6, 8

*Hartless v. Clorox Co.*,
273 F.R.D. 630 (S.D. Cal. 2011).......................................................................................... 14

*Hayes v. MagnaChip Semiconductor Corp.*,
2016 WL 6902856 (N.D. Cal. Nov. 21, 2016)...................................................................... 20

*Hefler v. Wells Fargo & Co.*,
2018 WL 4207245 (N.D. Cal. Sept. 4. 2018) ..................................................................... 15

*In re Amgen Inc. Sec. Litig.*,
2016 WL 10571773 (C.D. Cal. Oct. 25, 2016)........................................................... 12, 13, 16

*In re Anthem, Inc. Data Breach Litig.*,
327 F.R.D. 299 (N.D. Cal. 2018)........................................................................................... 7

*In re Bluetooth Headset Prods. Liab. Litig.*,
654 F.3d 935 (9th Cir. 2011).............................................................................................. 6, 8

*In re Celera Corp. Sec. Litig.*,
Case No. 5:10-cv-02604-EJD, 2015 WL 7351449 (N.D. Cal. Nov. 20, 2015) ...................... 13

*In re Heritage Bond Litig.*,
2005 WL 1594403 (C.D. Cal. June 10, 2005) ..................................................................... 13

*In re HP Sec. Litig.*
No. 3:12-cv-05980-CRB, 2015 WL 4477936 (N.D. Cal. July 20, 2015)................................ 21

*In re Immune Response Sec. Litig.*,
497 F. Supp. 2d 1166 (S.D. Cal. 2007).................................................................................. 12

**TABLE OF AUTHORITIES - (cont.)**

Page(s)

*In re LendingClub Sec. Litig.,*
 282 F. Supp. 3d 1171 (N.D. Cal. 2017) ................................................................. 5, 10

*In re LinkedIn User Privacy Litig.,*
 309 F.R.D. 573 (N.D. Cal. 2015) .................................................................................. 13

*In re Mego Fin. Corp. Sec. Litig.,*
 213 F.3d 454 (9th Cir. 2000) .......................................................................................... 9

*In re Netflix Privacy Litig.,*
 No. 5:11–CV–00379 EJD, 2013 WL 1120801 (N.D. Cal. Mar. 18, 2013) ................... 7

*In re Omnivision Techs., Inc.,*
 559 F. Supp. 2d 1036 (N.D. Cal. 2008) ................................................................... 3, 10

*In re Polaroid ERISA Litig.,*
 240 F.R.D. 65 (S.D.N.Y. 2006) ...................................................................................... 6

*In re Syncor ERISA Litig.,*
 516 F.3d 1095 (9th Cir. 2008) ........................................................................................ 3

*In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig.,*
 2019 WL 2077847 (N.D. Cal. May 10, 2019) ................................................................ 5

*Junge v. Geron Corp.,*
 No. C 20-00547-WHA, 2021 WL 1375960 (N.D. Cal. Apr. 12, 2021) ...................... 12

*Junge v. Geron Corp.,*
 No. C 20-00547-WHA, 2022 WL 1002446 (N.D. Cal. Apr. 2, 2022) ........................ 6

*Kim v. Allison,*
 8 F.4th 1170 (9th Cir. 2021) ........................................................................................... 4

*Kirkorian v. Borelli,*
 695 F. Supp. 446 (N.D. Cal. 1988) ............................................................................... 16

*Knapp v. Art.com, Inc.,*
 283 F. Supp. 3d 823 (N.D. Cal. 2017) .......................................................................... 11

*Lane v. Facebook, Inc.,*
 696 F.3d 811 (9th Cir. 2012) ........................................................................................... 4

*Lerwill v. Inflight Motion Pictures, Inc.,*
 582 F.2d 507 (9th Cir. 1978) ........................................................................................... 6

*Linney v. Cellular Alaska P'ship,*
 Nos. C-96-3008, 1997 WL 450064  (N.D. Cal. July 18, 1997)
 *aff'd,* 151 F.3d 1234 (9th Cir. 1998). ............................................................................. 7

*Luna v. Marvell Tech. Group,*
 No. C 15-05447 WHA, 2018 WL 1900150 (N.D. Cal. Apr. 20, 2018) .................. 17, 20

*Officers for Justice v. Civil Serv. Comm'n,*
 688 F.2d 615 (9th Cir. 1982) ....................................................................................... 5, 9

*Police Ret. Sys. of St. Louis v. Granite Constr. Inc.*,
  No. C 19-04744 WHA, 2022 WL 816473 (N.D. Cal. Mar. 17, 2022) .................................. 9, 16

*SEB Investment Management AB v. Symantec Corp.*,
  No. C 18-02902 WHA, 2022 WL 409702 (N.D. Cal. Feb. 10, 2022) ........................... 7, 15, 16

*Silber v. Mabon*,
  18 F.3d 1449 (9th Cir. 1994)............................................................................................... 20

*Thomas v. Magnachip Semiconductor Corp.*,
  No. 14-CV-01160-JST, 2016 WL 3879193 (N.D. Cal. July 18, 2016) ..................................... 10

*Torrisi v. Tucson Elec. Power Co.*,
  8 F.3d 1370 (9th Cir. 1993)............................................................................................. 10, 13

*Trabakoolas v. Watts Water Techs., Inc.*,
  Case No. 12-cv-01172-WHO, 2014 WL 126415992 (N.D. Cal. Aug. 5, 2014)......................... 7

**Statutes**

15 U.S.C.
  § 78u-4(a)(4) ......................................................................................................................... 2
  §§ 78u-4(a)(7) ..................................................................................... 19, 20, 21, 22

28 U.S. Code
  § 1715.................................................................................................................................... 4
  § 1715(b) .............................................................................................................................. 4

Securities Exchange Act of 1934
  Section 10(b) ....................................................................................................................... 9
  Section 20(a) ....................................................................................................................... 9

**Rules**

Federal Rules of Civil Procedure
  Rule 23 .......................................................................................................................*passim*

## MEMORANDUM OF POINTS AND AUTHORITIES

Lead Plaintiffs, on behalf of themselves and the Class, respectfully submit this memorandum in support of their Motion for Final Approval.

## PRELIMINARY STATEMENT

Pursuant to the terms of the Settlement, Lead Plaintiffs have obtained a recovery of $24,000,000, consisting of $17 million in cash (plus interest),[3] and $7,000,000 in Settlement Stock (or an equivalent amount in cash at Geron's option) for the benefit of the Class in exchange for the dismissal of all claims brought in the Action and a full release of claims against Defendants and the other released parties. The Settlement was reached after nearly three years of litigation and is the fruit of well-informed and extensive arm's-length settlement negotiations between skilled and knowledgeable counsel, which were closely supervised by the Court-appointed and experienced judicial officer, the Honorable Magistrate Judge Donna M. Ryu ("Judge Ryu"). *See generally* Campisi Decl., ¶¶7-149, 161-173.

The reaction of the Class thus far also supports the Settlement. Pursuant to the Preliminary Approval Order, over 145,486 copies of the Notice of (I) Settlement and Plan of Allocation; (II) Settlement Fairness Hearing; and (III) Motion for Attorneys' Fees and Litigation Expenses and Service Awards to Lead Plaintiffs (the "Settlement Notice") have been mailed or emailed to potential members of the Settlement Class or their nominees. Campisi Decl. Ex. H (Mahn Decl. ¶8). Although the deadline to object to the Settlement has not yet passed, to date, no Class Member has objected to the Settlement or Plan of Allocation, and just 21 shareholders representing 4,156 damaged shares out of approximately 139 million damaged shares, a *de minimus* amount of the total damaged shares, have requested to be excluded.[4] *Id.* (Mahn Decl. ¶¶39-40). Lead Plaintiffs will respond to objections, if any are submitted, in their reply (due March 23, 2023). Moreover, the Settlement has the full support of Lead Plaintiffs, who took an active role in supervising the

---

[3] On or around November 17, 2022, Defendants caused $17 million to be transferred to the Settlement Fund. Campisi Decl. ¶212, n.2. The funds were invested in U.S. Treasury bills and, as of January 31, 2023, the Settlement Fund has accrued approximately $99,208.44 in interest. *Id.*

[4] The Court-ordered deadline for Class Members to file objections to the Settlement or Plan of Allocation, and to request exclusion from the Class, is March 9, 2023. ECF No. 259.

1    Action and participated directly in the arm's length settlement negotiations. Campisi Decl.  Exs. B

2    and C.[5]

3          As more fully discussed below, the Settlement satisfies all of the factors considered under

4    Rule 23 and in the Ninth Circuit for approval of a class action settlement.  Lead Plaintiffs and Lead

5    Counsel performed a substantial investigation into the Class's claims, engaged in extensive motion

6    practice, and obtained certification of the Class. Campisi Decl. ¶¶20, 34-35, 38, 41-44, 51-134,

7    141-149. Lead Plaintiffs engaged in substantial discovery, which involved obtaining and analyzing

8    more than 426,000 electronic records (many of which were native files with multiple pages, slides

9    or data fields) produced by Defendants and non-parties, and 10 fact and/or class certification expert

10   depositions, including each member of Defendant Geron's Executive Management Committee

11   (which included Defendant Scarlett). *Id*. ¶¶57-58, 81.

12         The proposed Settlement is an excellent result for the Class given the significant risks that

13   Lead Plaintiffs faced in proving its securities fraud claims, as well as the costs and delays that

14   would accompany continued litigation. As discussed below and in the Campisi Declaration, Lead

15   Plaintiffs faced risks in proving their claims and Defendants vigorously disputed falsity, scienter,

16   loss causation and damages throughout the Action. The Settlement represents a recovery of

17   approximately 8-18% of potential class-wide damages (assuming Lead Plaintiffs would prevail on

18   elements of their claims at trial), which is well above the median settlement for securities class

19   action since 2012. *Id*. ¶230.

20         In light of Lead Plaintiffs' and Lead Counsel's informed assessment of: (i) the facts and law

21   specific to the Action; (ii) the strengths and weaknesses of the Class's claims, and the defenses

22   thereto, based on their extensive litigation and settlement efforts over the course of the Action; (iii)

23

24   [5] As defined in the Campisi Declaration, Exhibit B is the Declaration of Julia Junge in Support of
     Motion for Final Approval of Settlement and Plan of Allocation and in Support of Lead Counsel's
25   Motion for an Award of Attorneys' Fees, Reimbursement of Litigation Expenses and Awards to
     Lead Plaintiffs for Lost Wages under 15 U.S.C. § 78u-4(a)(4) (the "J. Junge Decl."), and Exhibit C
26   is the Declaration of Richard Junge in Support of Motion for Final Approval of Settlement and Plan
     of Allocation and in Support of Lead Counsel's Motion for an Award of Attorneys' Fees,
27   Reimbursement of Litigation Expenses and Awards to Lead Plaintiffs for Lost Wages under
     15 U.S.C. § 78u-4(a)(4) (the "R. Junge Decl.").  As used herein, Exhibits B and C are collectively
28   referred to as the "Lead Plaintiff Declarations."

the absence of opposition to the Settlement to date; (iv) the considerable risks and delays associated with continued litigation; and (v) Lead Counsel's considerable experience in similar class actions, the Settlement is fair, reasonable, and adequate.  Accordingly, Lead Plaintiffs respectfully request that the Court grant the motion for final approval of the Settlement.

Additionally, Lead Plaintiffs move the Court to approve the Plan of Allocation, which was set forth in the Settlement Notice mailed to potential Class Members. *Id.* Ex. A, pages 11-14.  The Plan of Allocation, which was developed in consultation with Lead Plaintiffs' damages expert, provides a reasonable and equitable method for allocating the Net Settlement Fund on a pro rata basis among Class Members who submit valid claims based on damages they suffered on purchases of Geron common stock that were attributable to the alleged fraud.  To date, no Class Member has objected to the Settlement or the Plan of Allocation.

## SUMMARY OF THE LITIGATION

Lead Counsel respectfully refers the Court to the accompanying Campisi Declaration for a detailed description of the procedural history of the Action, the claims asserted, the investigation and discovery undertaken by Lead Counsel, the parties' extensive motion practice, the negotiations and settlement conferences resulting in the Settlement and the risks and uncertainties involved in prosecuting the Action through trial.  *See generally* Campisi Decl., ¶¶1-149, 161-173, 222-240.

## ARGUMENT

### I.   The Proposed Settlement Warrants Final Approval

Federal Rule of Civil Procedure 23(e) requires judicial approval for any compromise or settlement of class-action claims. *See* Fed. R. Civ. P. 23(e). A class-action settlement should be approved if the court finds it "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2).

The Ninth Circuit recognizes "a strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *In re Syncor ERISA Litig*., 516 F.3d 1095, 1101 (9th Cir. 2008); *see also In re Omnivision Techs., Inc*., 559 F. Supp. 2d 1036, 1041 (N.D. Cal. 2008) ("Ninth Circuit[] policy favor[s] settlement, particularly in class action law suits"). Class actions readily lend themselves to compromise because of the difficulties of proof, the uncertainties of the outcome, and the typical length of the litigation. The settlement of complex cases like this

one also promotes efficient utilization of scarce judicial resources and the speedy resolution of claims.); *Garner v. State Farm Mut. Auto. Ins. Co.*, No. CV 08 1365 CW (EMC), 2010 WL 1687832, at *10 (N.D. Cal. Apr. 22, 2010 ("Settlement avoids the complexity, delay, risk and expense of continu[ed] … litigation" and "produce[s] a prompt, certain, and substantial recovery for the … class.").

In determining whether a proposed settlement is "fair, reasonable, and adequate," the Court should consider whether:

> (A)   the class representatives and class counsel have adequately represented the class;
>
> (B)   the proposal was negotiated at arm's length;
>
> (C)   the relief provided for the class is adequate, taking into account, [among other things,] the costs, risks, and delay of trial and appeal […]; and
>
> (D)   the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

In addition, the Ninth Circuit has held that district courts should consider the following factors in evaluating the fairness of a class action settlement:

> (1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant[6]; and (8) the reaction of the class members to the proposed settlement.

*Churchill Village L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004); *accord Lane v. Facebook, Inc.*, 696 F.3d 811, 819 (9th Cir. 2012); *Kim v. Allison*, 8 F.4th 1170, 1178 (9th Cir. 2021) (citing *Churchill* factors). *See also Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998); *see*

---

[6] In ECF No. 252, Defendants informed the Court that they caused the notice "contemplated by the Class Action Fairness Act, 28 U.S.C. § 1715 et seq. ["CAFA"], to be timely mailed on September 9, 2022, and will file an affidavit or declaration confirming such at least seven calendar days prior to the Settlement Fairness Hearing", as required by the terms of the Stipulation. *See* ECF No. 247 at paragraph 21.  28 U.S. Code § 1715 provides the requirements for the CAFA notice and indicates that, among other things, the notice is to be provided to the "appropriate State official of each State in which a class member resides and the appropriate Federal official [defined as the Attorney General of the United States]." *See* 28 U.S. Code § 1715(b).  To date, Lead Plaintiffs have not been informed of any responses to the CAFA notice.

*also In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig.*, 2019 WL 2077847, at *1 (N.D. Cal. May 10, 2019) (approving settlement after considering both the "Rule 23(e)(2) factors … and the factors identified in" Ninth Circuit case law).

The Ninth Circuit has explained that courts' review of settlements should be "limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Hanlon*, 150 F.3d at 1027. Thus, a settlement hearing should "not to be turned into a trial or rehearsal for trial on the merits," *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982), and a court "need not 'reach any ultimate conclusions on the contested issues of fact and law which underlie the merits of the dispute, for it is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements.'" *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1291 (9th Cir. 1992). Under Rule 23 and the *Churchill* factors, the Settlement is fair, reasonable and adequate, and should be approved by the Court. As noted above, the Court has already certified the Class in this Action. At the hearing on the Motion for Preliminary Approval, Lead Counsel informed the Court that the definition of the Class in the Stipulation is identical to the Class the Court certified on April 2, 2022 (*i.e.* no change or modification of the defined Class), and that the releases set forth in the Stipulation are narrowly tailored. ECF No. 257 (10/13/22 Tr.) at 16:17-17:6; 22:12-16.

**A.  <u>Lead Plaintiffs Have Adequately Represented the Class</u>**

At the settlement approval stage, the first Rule 23 consideration is whether "the class representatives and class counsel have adequately represented the class." Fed. R. Civ. P. 23(e)(2)(A). To determine adequacy, "courts consider two questions: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members, and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *See, e.g., In re LendingClub Sec. Litig.*, 282 F. Supp. 3d 1171, 1182 (N.D. Cal. 2017) (Alsup, J.).

Here, Lead Plaintiffs' claims are typical of and coextensive with those of the Class, and they do not have any interests that are antagonistic to the interest of other members of the Class.

*See Lerwill v. Inflight Motion Pictures, Inc*., 582 F.2d 507, 512 (9th Cir. 1978); *Hanlon*, 150 F.3d at 1020. Lead Plaintiffs—like all other Class Members—have an interest in obtaining the largest possible recovery from Defendants. *See In re Polaroid ERISA Litig*., 240 F.R.D. 65, 77 (S.D.N.Y. 2006) ("Where plaintiffs and class members share the common goal of maximizing recovery, there is no conflict of interest between the class representatives and other class members."). On April 30, 2020, the Court interviewed the Lead Plaintiffs before appointing them, and later in the connection with their motion for certification of the Class, the Court appointed Lead Plaintiffs as Class Representatives. *See Junge v. Geron Corp.,* No. C 20-00547-WHA, 2022 WL 1002446, at *10 (N.D. Cal. Apr. 2, 2022).

Further, Lead Plaintiffs have adequately represented the Class in both their vigorous prosecution of the Action and in the negotiation and achievement of the proposed Settlement. Lead Plaintiffs played an active role in supervising and participating in the Action, attended the hearing on the Defendants' Motion to Dismiss, the hearing on their Motion for Class Certification, attended both settlement conferences before Judge Ryu, and retained counsel who are highly experienced in securities litigation and have successfully prosecuted many complex class actions throughout the United States. *See* Campisi Decl. ¶¶9-20, 25, 37, 59-81, 147, 161-171 and Ex. P (Lead Counsel's firm resume).

Accordingly, Lead Plaintiffs have adequately—indeed, zealously— represented the Class.

**B.     The Settlement Was Reached After Substantial Discovery, Arm's-Length Negotiations Between Experienced Counsel, and Two Settlement Conferences with an Experienced Magistrate Judge Serving as the Mediator**

The next Rule 23 consideration is whether the settlement "was negotiated at arm's length." Fed. R. Civ. P. 23(e)(2)(B). This includes consideration of related circumstances bearing on the procedural fairness of the settlement, including (i) counsel's understanding of the strengths and weakness of the case based on factors such as "the extent of discovery completed and the stage of the proceedings," *Hanlon*, 150 F.3d at 1026; (ii) the presence or absence of any indicia of collusion, *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 947 (9th Cir. 2011); and (iii) the involvement of a mediator.

Here, the proposed Settlement was reached only after several months of arm's-length negotiations between the Parties, including two settlement conferences, which were closely supervised by and actively involved Judge Ryu. *See* Campisi Decl., ¶¶161-172.  None of the indicia of collusion exist.  Indeed, the settlement conferences occurred *after* the Class was certified and *after* substantial discovery, including 10 depositions of fact or expert witnesses, and the substantial production of documents by Defendants and non-parties. *Id.* ¶¶81, 148, 161-172.  The involvement of an experienced mediator in the settlement process, like Judge Ryu here, further "confirms that the settlement is non-collusive." *In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299, 327 (N.D. Cal. 2018); *see also Trabakoolas v. Watts Water Techs., Inc.*, Case No. 12-cv-01172-WHO, 2014 WL 12641599, at *2 (N.D. Cal. Aug. 5, 2014) (finding that settlement "resulted from extensive, good-faith, arm's-length negotiations between experienced counsel" where a former federal judge "presided during two in-person mediation sessions and follow-up negotiations between the parties over several months, which ultimately resulted in the settlement before the Court"); *SEB Investment Management AB v. Symantec Corp.*, No. C 18-02902 WHA, 2022 WL 409702, at *3 (N.D. Cal. Feb. 10, 2022) (noting use of Magistrate Ryu to oversee settlement process).

As courts in this District have explained, the fact that the Parties reached a settlement through arm's-length negotiations between experienced counsel creates a presumption of its fairness. *See In re Netflix Privacy Litig.*, No. 5:11–CV–00379 EJD, 2013 WL 1120801, at *4 (N.D. Cal. Mar. 18, 2013) ("Courts have afforded a presumption of fairness and reasonableness of a settlement agreement where that agreement was the product of non-collusive, arms' length negotiations conducted by capable and experienced counsel"); *Linney v. Cellular Alaska P'ship*, Nos. C-96-3008, 1997 WL 450064, at *5 (N.D. Cal. July 18, 1997) ("The involvement of experienced class action counsel and the fact that the settlement agreement was reached in arm's length negotiations, after relevant discovery had taken place create a presumption that the agreement is fair."), *aff'd*, 151 F.3d 1234 (9th Cir. 1998).

In addition, Lead Plaintiffs possessed a thorough understanding of the strengths and weaknesses of the Action before reaching the proposed Settlement. As detailed in the Campisi Declaration, Lead Counsel conducted a detailed, substantive investigation, defeated Defendants'

motion to dismiss, in part, filed a successful motion for class certification, completed extensive fact and expert discovery, including the review and analysis of 426,000 records produced by Defendants and third parties (including pages produced in native format, *e.g.*, PowerPoint and Microsoft Excel files) and taking 10 depositions. Finally, Lead Plaintiffs actively participated in extensive settlement negotiations assisted by Judge Ryu, which further informed them of the strength of each side's arguments. Campisi Decl. ¶¶161-171.

Further, the proposed Settlement has none of the indicia of possible collusion identified by the Ninth Circuit, such as a "clear-sailing" fee agreement or a provision that would allow settlement proceeds to revert to Defendants.  ECF No. 247 (Stipulation); ECF No. 257 (10/13 Hr. Tr. at 22:12-18); *see Bluetooth Headset*, 654 F.3d at 947. In short, the Settlement was reached after extensive arm's-length negotiations supervised by a judicial officer deeply experienced in mediation who was appointed by the Court and conducted by well-informed counsel after the substantial completion of discovery and was not a product of fraud, overreaching, or collusion among the parties.

**C.      The Relief that the Settlement Provides for the Class Is Adequate, Taking into Account the Costs and Risks of Further Litigation and All Other Relevant Factors**

Next, Rule 23 requires courts to determine whether a class-action settlement is "fair, reasonable, and adequate," including by "taking into account . . . the costs, risks, and delay of trial and appeal," as well as other relevant factors. Fed. R. Civ. P. 23(e)(2)(C). This Rule 23 analysis essentially encompasses four of the seven factors of the traditional *Churchill* and/or *Hanlon* analysis: (1) the strength of plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class-action status throughout the trial; and (4) the amount offered in settlement. *See Churchill,* 361 F.3d at 575; *Hanlon,* 150 F.3d at 1026. Here, each of these factors supports approval.

**1.      The Amount of the Proposed Settlement**

The amount of a settlement "is generally considered the most important [factor], because the critical component of any settlement is the amount of relief obtained by the class." *Destefano v. Zynga, Inc.*, 2016 WL 537946, at *11 (N.D. Cal. Feb. 11, 2016). However, "[i]t is well-settled law that a cash settlement amounting to only a fraction of the potential recovery does not per se render

the settlement inadequate or unfair." *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000). In assessing the recovery, a fundamental question is how the value of the settlement compares to the amount the Class potentially could recover at trial, discounted for risk, delay, and expense. "Naturally, the agreement reached normally embodies a compromise; in exchange for the saving of cost and elimination of risk, the parties each give up something they might have won had they proceeded with litigation." *Officers for Justice*, 688 F. 2d at 624.

Here, the Settlement Amount—$24 million ($17 million in cash, plus interest, and $7 million in Settlement Stock)—represents a favorable recovery for the Class in light of the risks.[7] The Settlement is more than three times the size of the median securities class action settlement during the period 2012 and 2021 both in the Ninth Circuit ($6.9 million) and nationwide ($7.9 million). *See* Cornerstone Research, Securities Class Action Settlements: 2021 Review and Analysis, at 7, 19 (March 2022), Campisi Decl. Ex. N, at 7 and 19. According to NERA Economic Consulting, the Settlement is nearly twice the median securities class action settlement value in 2022, which was $13 million. Campisi Decl. Ex. O (NERA 2023 Report). These reports are considered by courts when evaluating the fairness, reasonableness, and adequacy of class action settlements. *See Police Ret. Sys. of St. Louis v. Granite Constr. Inc.*, No. C 19-04744 WHA, 2022 WL 816473, at *3 (N.D. Cal. Mar. 17, 2022) (Alsup, J.). Thus, even leaving aside the risks, the proposed Settlement constitutes a substantial recovery for Class members.

Moreover, the recovery under the Settlement provides a substantial financial benefit to the Class in comparison to overall potential damages and eliminates the significant risk that the Class could recover less, or even nothing at all, if the Action continued through summary judgment, trial, and appeals. Lead Plaintiffs' damages expert has estimated that the maximum possible damages here, assuming complete success in proving liability and 100% valid claims from the Class post-trial, would be approximately $272 million in total Class-wide damages for Lead Plaintiffs' claims under Sections 10(b) and/or 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act").

---

[7] As of the date of this filing, Defendant Geron has not indicated whether it will exercise its option to pay all or some of the $7 million Geron Common Stock component of the Settlement Amount in cash.

This assumes Lead Plaintiffs would have complete success in proving all claims and damages calculations in dispute. For example, if Class Members' gains on shares owned prior to the Class Period but sold for a gain during the Class Period were netted against any losses (as several courts have required at trial) and if only the stock drop on the one trading day after the Class Period were considered (as compared to the two-day drop alleged in the Amended Complaint), then the maximum possible damages could be reduced to approximately $130 million—still assuming Plaintiffs' success in proving liability, loss causation, and damages at trial. Thus, the $24 million Settlement represents approximately 8.8% to 18.4% of the Class's estimated recoverable damages. *See* Campisi Decl. ¶230.  According to the Cornerstone Report, the recovery exceeds the average 4.8% recovery of damages in cases alleging only fraud claims under the Exchange Act during the period 2012 through 2021. Campisi Decl. Ex. N, at 7.

Given the significant risks of establishing liability and damages here, the $24 million Settlement represents an excellent result for the Class compared to other securities class action settlements. *See, e.g., Omnivision*, 559 F. Supp. 2d at 1042 (9% of maximum potential recovery; in excess of 6% of possible recovery after fees and expenses) (Conti, J.); *LendingClub*, 2018 WL 1367336, at *2 (settlement of approximately 17% of total estimated damages) (Alsup J.); *Thomas v. Magnachip Semiconductor Corp.*, No. 14-CV-01160-JST, 2016 WL 3879193, at *2 (N.D. Cal. July 18, 2016) (settlement representing 15% of likely recovery at trial) (Tigar, J.); *Fleming v. Impax Lab's Inc*., No. 16-CV-06557-HSG, 2022 WL 2789496, at *6 (N.D. Cal. July 15, 2022) (12.5% of estimated damages recoverable at trial) (Gilliam, J.).

Accordingly, the quality of the result achieved supports approval of the Settlement.

### 2.      The Strengths and Weaknesses of Lead Plaintiffs' Action and the Significant Risks of Continued Litigation

Courts evaluating proposed class action settlements consider the strength of the plaintiff's case and the risks of further litigation. *See Torrisi v. Tucson Elec. Power Co*., 8 F.3d 1370, 1376 (9th Cir. 1993). To determine whether the proposed Settlement is fair, reasonable, and adequate, the Court "must balance the risks of continued litigation, including the strengths and weaknesses

of plaintiff's case, against the benefits afforded to class members, including the immediacy and certainty of a recovery." *Knapp v. Art.com, Inc*., 283 F. Supp. 3d 823, 831 (N.D. Cal. 2017).

In considering whether to agree to the Settlement, Lead Plaintiffs, represented by Lead Counsel with considerable experience in class and securities litigation, weighed the risks inherent in establishing the elements of their claims, including risks at summary judgment and at trial of proving to a jury the elements of falsity, scienter, loss causation, and full damages. While Lead Plaintiffs believe that they would have overcome these risks and prevailed at summary judgment and trial, the following risks existed and were emphasized by Defendants. *See* Campisi Decl. ¶¶232-240.

Defendants steadfastly maintained that their representations to investors were truthful and accurate, and that they did not act with the intent to mislead Geron investors. Defendants asserted that their failure to reveal the actual results of the IMbark trial data are not actionable securities fraud because the data was not objectively adverse, but open to subjective interpretation, that the trial data was not final at the start of the Class Period, and that neither they nor Janssen viewed the IMbark study data as adverse or negative. Defendants asserted that the IMbark study's reporting of metrics on spleen volume response (*i.e.*, a reduction in spleen size, an adverse physical impact of MF) and total symptom score (*i.e.*, a reduction in symptoms of those suffering from MF) did not have to meet any statistical threshold for imetelstat to advance in its clinical development from Phase 2 (the level of the IMbark study) to Phase 3. This dispute was and would continue to be a core dispute between the Parties at summary judgment or trial, and potentially a "battle of the experts" with an unpredictable outcome before a jury.

Defendants further asserted that Lead Plaintiffs would be unable to prove that Defendants knew of Janssen's decision to terminate in advance of its public announcement, that Janssen's decision was based on the IMbark study data, and that the IMbark study's data results were adverse or negative. As noted herein, after extensive fact discovery, Defendants continued to assert that it was "crystal clear that the [Janssen] continuation decision was driven by precisely what Janssen publicly disclosed, which was a strategic portfolio valuation and prioritization of assets." *See* ECF No. 54 in 3:22-mc-80051-WHA (July 14, 2022 Tr.) at 26:19-21.

Assuming Lead Plaintiffs were able to prove to a jury that Defendants' statements were materially false or that they failed to disclose material facts they had a duty to disclose, they would still need to prove that Defendants made the alleged false statements with the intent to mislead investors or with deliberate recklessness. As courts have recognized, defendant's state of mind in a securities case "is the most difficult element of proof and one that is rarely supported by direct evidence." *See, e.g., In re Amgen Inc. Sec. Litig.*, 2016 WL 10571773, at *3 (C.D. Cal. Oct. 25, 2016); *see also In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1172 (S.D. Cal. 2007) (noting that scienter is a "complex and difficult [element] to establish at trial").

Lead Plaintiffs faced significant risks in proving scienter—*i.e.*, that Defendants knowingly or recklessly deceived investors. *See Junge v. Geron Corp.*, No. C 20-00547-WHA, 2021 WL 1375960, at *6-*7 (N.D. Cal. Apr. 12, 2021) (discussing need to plead scienter with particularity). For example, Defendants maintained that Defendant Scarlett's lack of stock sales during the Class Period supports the inference that he did not act knowingly or with deliberate recklessness, and that the stock sales by the Company and other insiders do not support a showing of scienter. *See* ECF No. 117 at 13-14. Lead Plaintiffs deposed each of member of Defendant Geron's Executive Management Committee, which included Defendant Scarlett, and each denied intent to deceive Geron investors, and provided testimony indicating that they believed that their representations to Geron investors were truthful and accurate. Thus, the possibility that the Court at summary judgment, or a jury at trial, might side with Defendants was a risk.

Lead Plaintiffs also faced significant risks to proving loss causation and damages. For example, Defendants contended that Lead Plaintiff could not establish a causal connection between the alleged misrepresentations and omissions, and the loss allegedly suffered by investors. Defendants asserted that Geron's announcement of the clinical trial data on the IMbark study at the end of the Class Period was issued at the same time as the announcement that Geron's collaboration partner in the study, Janssen, announced a decision to discontinue the collaboration, and that therefore it is uncertain what, if any, portion of the resulting stock decline may be attributed to the disclosure of the allegedly adverse IMbark study data, presenting challenges to proof of loss causation and damages.

The resolution of these disputed issues regarding damages and loss causation would have boiled down to a "battle of experts." As Courts have long recognized, the uncertainty as to which side's expert's view might be credited by the jury presents a substantial litigation risk in securities actions. *See In re Celera Corp. Sec. Litig.*, Case No. 5:10-cv-02604-EJD, 2015 WL 7351449, at *6 (N.D. Cal. Nov. 20, 2015) (finding that risks related to the "battle of experts" weighed in favor of settlement approval).

Finally, while Lead Plaintiffs were successful in certifying a class, there was always a risk that Defendants could seek to alter or amend at any time before final judgment. Fed. R. Civ. P. 23(c)(1)(C); *see also Freitas v. Cricket Wireless, LLC*, No. C 19-07270 WHA, 2022 WL 3018061 (N.D. Cal. July 29, 2022) (Alsup, J.).

### 3. The Duration and Costs of Continued Litigation

Courts consistently recognize that the likely duration and costs of continued litigation are key factors in evaluating the reasonableness of a settlement. *See, e.g., Torrisi*, 8 F.3d at 1376 (finding that "the cost, complexity and time of fully litigating the case" rendered the settlement fair). "Generally, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." *In re LinkedIn User Privacy Litig.*, 309 F.R.D. 573, 587 (N.D. Cal. 2015); *see also In re Heritage Bond Litig.*, 2005 WL 1594403, at *6 (C.D. Cal. June 10, 2005) (finding that securities class actions have well-deserved reputation for complexity).

Here, without the proposed Settlement, continued litigation would have required (i) overcoming Defendants' anticipated summary judgment motion; (ii) extensive pre-trial motion practice such as motions *in limine* and *Daubert* motions; (iii) a trial requiring a substantial amount of detailed factual and expert testimony; (iv) likely post-verdict challenges to individual Class Members' damages; and (v) appeals from any verdict in favor of the Class. The continued litigation and appeals would have been costly and would have substantially delayed any recovery for Class Members, possibly for years. *See Zynga*, 2016 WL 537946, at *10; *Amgen*, 2016 WL 10571773, at *3 ("A trial of a complex, fact-intensive case … [as here] … could have taken weeks, and the likely appeals of rulings on summary judgment and at trial could have added years to the litigation.").

Moreover, continued litigation would have further depleted the directors and officers liability ("D&O") insurance proceeds available to contribute to the Settlement Amount. Moreover, Lead Counsel has incurred at least $1,086,353.27 in litigation expenses. Campisi Decl. ¶318.

And even if a favorable trial verdict was affirmed on appeal, the Class would have faced a potentially complex, lengthy, and contested claims-administration process. Absent the proposed Settlement, there is no question that resolution of this case would take considerable time and require additional expenses, with the end result not remotely certain. *See Hartless v. Clorox Co*., 273 F.R.D. 630, 640 (S.D. Cal. 2011) ("Considering these risks, expenses and delays, an immediate and certain recovery for class members . . . favors settlement of this action.").

Thus, the risk, complexity, and likely duration of further litigation support approval of the Settlement. The present value of a certain and substantial recovery now, as opposed to the mere chance of a possibly greater one many months or even years later, supports approval of the Settlement because it eliminates the expense and delay of continued litigation and the risk that the Class could receive no recovery.

### 4. All Other Factors in Rule 23(e)(2)(C) Support Approval of the Settlement

Rule 23(e)(2)(C) also instructs courts to consider whether the relief provided for the class is adequate in light of "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims," "the terms of any proposed award of attorney's fees, including timing of payment," and "any agreement required to be identified under Rule 23(e)(3)." Fed. R. Civ. P. 23(e)(2)(C)(ii)-(iv). Each of these factors supports approval of the Settlement or is neutral and does not suggest any basis for a finding that the Settlement is inadequate.

First, the procedures for processing Class Members' claims and distributing the proceeds of the Settlement to eligible claimants are well-established, effective methods that have been widely used in securities class action litigation. The proceeds of the Settlement will be distributed to Class Members who submit eligible Claim Forms with required documentation to Epiq, the Court approved Claims Administrator.   Epiq, an independent company with extensive experience

administering securities class actions, will review and process the claims under Lead Counsel's supervision, provide claimants with an opportunity to cure any deficiencies in their claims or request review of the denial of their claims by the Court, and then mail their pro rata share of the Net Settlement Fund (as calculated under the Plan of Allocation) after approval of the Court.  This type of claims processing is standard in securities class actions and has long been used and found to be effective. This claim procedure is necessary because neither Lead Plaintiffs nor Defendants possess data regarding investors' transactions in Geron common stock that would allow the Parties to create a claims-free process to distribute the Net Settlement Fund.

Second, the relief provided for the Class in the Settlement is also adequate when the terms and timing of the proposed award of attorney's fees are taken into account. Lead Counsel requests a fee of 18% of the Settlement Fund, plus interest. The basis for this request and its reasonableness are addressed in the accompanying Motion for an Award of Attorneys' Fees, Reimbursement of Litigation Expenses, and Awards to Lead Plaintiffs for Lost Wages under 15 U.S.C. § 78u-4(a)(4).

Lastly, Rule 23(e)(2)(C) asks the Court to consider the Settlement's fairness in light of any agreements required to be identified under Rule 23(e)(3). See Fed. R. Civ. P. 23(e)(2)(C)(iv). As previously disclosed, the only agreement the Parties entered into in addition to the Stipulation was a confidential Supplemental Agreement regarding requests for exclusion (*see* Stipulation ¶38). *See* ECF No. 247. The Supplemental Agreement gives Geron the right, but not the obligation, to terminate the Settlement if the valid requests for exclusion received from persons and entities entitled to be members of the Class exceeds an amount agreed to by Lead Plaintiffs and Geron. *Id*. This type of agreement is standard in securities class actions and has no negative impact on the fairness of the Settlement. *See, e.g., Hefler v. Wells Fargo & Co.*, 2018 WL 4207245, at *11 (N.D. Cal. Sept. 4, 2018) ("The existence of a termination option triggered by the number of class members who opt out of the Settlement does not by itself render the Settlement unfair."); *Symantec*, 2022 WL 409702, at *7 (supplemental agreement regarding termination based on number of exclusions did not impact fairness or adequacy of settlement).

1

     **D.**    <u>**The Settlement Treats Class Members Equitably**</u>

2

     In determining whether a class action settlement is "fair, reasonable, and adequate," the

3

Court must also consider whether the Settlement treats class members equitably relative to each

4

other. *See* Fed. R. Civ. P. 23(e)(2)(D). Here, the proposed Settlement does so. As discussed below

5

in Part II (discussing the Plan of Allocation), eligible claimants approved for payment by the Court

6

will receive their pro rata share of the recovery based on losses according to the Plan of Allocation,

7

as further discussed below. No subset of the Class is receiving any special treatment and Lead

8

Plaintiffs will receive the same pro rata recovery under the Plan of Allocation (based on its

9

Recognized Claims as calculated under the Plan) as all other Class Members.  *See* Campisi Decl.

10

¶¶205-210.

11

     **E.**    **Additional Factors Considered by the Ninth Circuit**

12

           <u>**Support Approval of the Settlement**</u>

13

     Two additional factors considered by the Ninth Circuit in assessing the reasonableness of a

14

proposed settlement are "the experience and views of counsel" and "the reaction of the class

15

members to the proposed settlement." *Churchill*, 361 F.3d at 575. Each of these factors also

16

supports the Settlement.

17

     As courts in this District have explained, "[t]he recommendation of experienced counsel

18

carries significant weight in the court's determination of the reasonableness of the settlement."

19

*Kirkorian v. Borelli*, 695 F. Supp. 446, 451 (N.D. Cal. 1988). This Court has found this factor

20

satisfied when counsel with securities litigation experience supports the settlement.  *Granite*, 2022

21

WL 816473, at *3 (the "abilities and views of counsel support settlement", noting counsel's

22

extensive experience in securities class actions); *Symantec,* 2022 WL 409702, at *7 (noting the

23

experience of counsel in securities litigation as a factor supporting settlement). Here, Lead

24

Counsel—based on a thorough understanding of the strengths and weaknesses of the Action—

25

concluded that the proposed Settlement represents an excellent outcome for Class Members given

26

the risks and the range and probability of potential outcomes.  Campisi Decl. ¶¶222-245.

27

     Likewise, the positive reaction of the Class to the Settlement to date is another factor that

28

favors approval of the Settlement. *See Amgen*, 2016 WL 10571773, at *4; *Symantec,*  2022 WL

409702, at *7 (noting that "[o]nly eleven individual class members (no institutional investors) have opted out in connection with the proposed settlement" and "[n]ot a single class member has submitted an objection."); *Luna v. Marvell Tech. Group*, No. C 15-05447 WHA, 2018 WL 1900150, at *3 (N.D. Cal. Apr. 20, 2018) (Alsup, J.) (noting lack of objections). Pursuant to the Preliminary Approval Order, the Court-appointed Claims Administrator, Epiq, has mailed or emailed a total of 145,486 copies of the Court-approved Settlement Notice and Claim Form (collectively, the "Notice Packet") to potential Class Members and nominees as of January 31, 2023. Campisi Decl. Ex. H (Mahn Decl. ¶8).  In addition, the Court-approved Summary Settlement Notice was published in the *IBD Weekly* (*Investors' Business Daily*) on November 7, 2022, and in *The Wall Street Journal*, and also transmitted over the PR Newswire. *Id.* (Mahn Decl. ¶26).

In addition, as set forth in the Final Approval Motion, Epiq has hosted a website for the Settlement at www.geronsecuritieslitigation.com, and Lead Counsel has posted the Summary Settlement Notice, Settlement Notice and Claim Form have been posted on Lead Counsel's website (https://www.kaplanfox.com/news/1579-geroncorp.html). Campisi Decl. Ex. H (Mahn Decl. ¶¶32-34). On September 6, 2022, Geron also filed a Current Report on Form 8-K announcing entry of the Stipulation (the "Form 8-K").  Campisi Decl. Ex. I.  As of the time of filing this Motion, Geron's website (www.geron.com) continues to post a copy of this Form 8-K on the "Investors & Media" tab under the subject of "SEC Filings" that are searchable by type and year of filing.

News of the Settlement has also been disseminated through Portfolio Media, Inc.'s Law360 publication ("Law360") and Institutional Shareholder Services Securities Class Action Services ("ISS SCAS").  *Id*. Ex. J.  In addition, Lead Counsel caused the Summary Settlement Notice to be reissued on the Globe Newswire on January 16, 2023.  *Id*. Ex. L.

The Settlement Notice and Summary Settlement Notice set out the essential terms of the Settlement and informed potential Class Members of, among other things, their additional opportunity to request exclusion from the Class or object to any aspect of the proposed Settlement or Plan of Allocation. Campisi Decl. Ex. A (Settlement Notice, ¶¶74-93) and Ex. G (Summary Settlement Notice).  While the March 9, 2023 deadline for Class Members to exclude themselves or object has not yet passed, to date, no objections to the Settlement or the Plan of Allocation have

been received. Campisi Decl. at ¶256 and Ex. H (Mahn Decl. ¶44). In addition, to date, only 21 requests for exclusion from the Class have been received in addition to those received in response to the Original Class Notice. *Id*. ¶255 and Ex. H (Mahn Decl. ¶¶39-40). In addition, as set forth in the Lead Plaintiff Declarations, they support approval of the settlement based on the result obtained, the efforts of Lead Counsel and the risks in the Action. *See* Ex. B (J. Junge Decl.) ¶¶35-37, 39-40; Ex. C (R. Junge Decl.) ¶¶25-27, 29-30. *See e.g. Luna*, 2018 WL 1900150, at *3 (noting lead plaintiff support in connection with determination of reasonableness and fairness of settlement).

In sum, all of factors to be considered under Rule 23(e)(2) and the *Churchill* factors support a finding that the proposed Settlement is fair, reasonable, and adequate.

## II.     The Plan of Allocation Is Fair and Reasonable

In addition to seeking final approval of the Settlement, Lead Plaintiffs seek approval of the proposed Plan of Allocation for the Settlement proceeds. The Plan of Allocation is set in the Settlement Notice mailed to Class Members. Campisi Decl., Ex. A at 11-14 (Settlement Notice). Accordingly, it is the same Plan of Allocation as that which was contained in the Settlement Notice approved by the Court. *See* ECF Nos. 253, 257, 259.

The standard for approval of a plan of allocation in a class action under Rule 23 is the same as the standard applicable to the settlement as a whole: the plan must be "fair, reasonable, and adequate." *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1284-1285 (9th Cir. 1992); *see also Symantec,* 2022 WL 409702, at *5; *Luna*, 2018 WL 1900150, at *3 (plan of allocation is fair and reasonable where it provides a pro rata share of settlement fund tied to submission of an acceptable proof of claim that permits "recover[y of] settlement funds depending on when during the class period [shareholder] bought Marvell stock and whether they sold their shares."); *Omnivision*, 559 F. Supp. 2d at 1045; *Vataj v. Johnson*, No. 19-cv-06996-HSG, 2021 WL 1550478, at *10 (N.D. Cal. Apr. 20, 2021). A plan of allocation that is "tied directly to the certified claims and theories of liability" is fair, reasonable and adequate and treats class members equitably relative to each other. *Symantec*, 2022 WL 409702, at *5. Courts hold that "[a] plan of allocation that reimburses class members based on the extent of their injuries is generally reasonable." *In re Oracle Sec. Litig*., 1994 WL 502054, at *1 (N.D. Cal. June 18, 1994).

- 18 -

Case No. 3:20-cv-00547-WHA (DMR)
NOTICE OF MOT. AND MOT. FOR FINAL APPROVAL OF SETTLEMENT AND PLAN OF ALLOCATION; MPA ISO THEREOF

The proposed Plan of Allocation, which Lead Counsel developed with the assistance of Lead Plaintiffs' damages expert, provides a fair, reasonable and equitable basis to allocate the Net Settlement Fund among Class Members who submit valid and timely Claim Forms. In developing the Plan of Allocation, Lead Plaintiffs' expert calculated the estimated amount of artificial inflation in the per-share price of Geron common stock that was allegedly caused by Defendants' alleged misstatements. *See* Campisi Decl., ¶207.  In so doing, the expert considered the price changes in Geron common stock in reaction to the disclosure that allegedly corrected the alleged misrepresentations concerning imetelstat and the IMbark study. *Id.* Ex. A (Settlement Notice, ¶¶58-72).  The Plan of Allocation calculates a "Recognized Loss Amount" for each purchase of Geron common stock during the Class Period that is listed in the Claim Form and for which adequate supporting documentation is provided. *Id.*  ¶61.  For shares sold during or after the 90-day period following the end of the Class Period, the Plan limits Recognized Loss Amounts based on the average price of the stock during that 90-day period, consistent with the PSLRA. *Id.*  ¶62. n.3.

Under the proposed Plan of Allocation, claimants who purchased shares during the Class Period but did not hold those shares through the end of trading on the day of the September 27, 2018 corrective disclosure will have no Recognized Loss Amount as to those transactions because any loss they suffered would not have been caused by revelation of the alleged fraud. *Id.* at ¶60. The sum of a claimant's Recognized Loss Amounts for all of his, her, or its Class Period purchases is the Claimant's "Recognized Claim." *Id.*  ¶64.  The Net Settlement Fund will be allocated to Authorized Claimants on a pro rata basis based on the relative size of their Recognized Claims. *Id.* ¶¶68-70.

If any funds remain after an initial distribution to Authorized Claimants as a result of uncashed or returned checks or other reasons, subsequent distributions will also be conducted as long as they are cost effective. *Id.* ¶71. The Plan of Allocation will result in a fair and equitable distribution of the Settlement proceeds among Class Members who timely submit valid claims.

Notably, as set forth above, as of January 31, 2023, more than 145,486 copies of the Settlement Notice, which contains the Plan of Allocation and advises Class Members of their right to object to the Plan, have been mailed or emailed to potential Class Members. Campisi Decl.  Ex. H

- 19 -

1   (Mahn Decl. ¶8). To date, no objections to the Plan of Allocation have been received. Campisi

2   Decl. Ex. H (Mahn Decl. ¶44).

3          In sum, Lead Plaintiffs respectfully submit that the proposed Plan of Allocation is fair and

4   reasonable and should be approved.

5   **III.   Notice to the Class Satisfied the Requirements of Rule 23 and Due Process**

6          As set forth above, in accordance with the Court's Preliminary Approval Order, Epiq, the

7   Court approved Claims Administrator, began mailing and/or emailing copies of the Notice Packet

8   to potential Class Members and nominees on October 28, 2022. *Id.* ¶190 and Ex. H (Mahn

9   Decl. ¶8).

10         The Settlement Notice and Summary Settlement Notice provided to the Class in accordance

11  with the Court's Preliminary Approval Order satisfied all the requirements of due process, Rule 23,

12  and the PSLRA. Notice of a class action settlement must be directed "in a reasonable manner to all

13  class members who would be bound" by the Settlement. Rule 23(e)(1)(B). The notice "is

14  satisfactory if it generally describes the terms of the settlement in sufficient detail to alert those

15  with adverse viewpoints to investigate and to come forward and be heard." *See Churchill*, 361 F.3d

16  at 575; *Luna*, 2018 WL 1900150, at *2 (same). "The Court must ensure that the parties' notice plan

17  provides for 'the best notice that is practicable under the circumstances, including individual notice

18  to all members who can be identified through reasonable effort' and that the notice itself explains

19  in easily understood language the nature of the action, definition of the class, class claims, issues

20  and defenses, ability to appear through individual counsel, procedure to request exclusion, and the

21  binding nature of the class judgment." *Ching v. Siemens Indus., Inc.*, No. C 11-4838 MEJ, 2013

22  WL 6200190, at *6 (N.D. Cal. Nov. 27, 2013) (*quoting* Fed. R. Civ. P. 23(c)(2)(B)); *Silber v.*

23  *Mabon*, 18 F.3d 1449, 1453-54 (9th Cir. 1994).

24         The notice program's combination of individual first-class mail to all potential Class

25  Members who could be identified with reasonable effort, supplemented by notice in widely

26  circulated publications, transmission over a business newswire, and publication on internet

27  websites, satisfies all requirements of Rule 23 and due process. *See, e.g., Hayes v. MagnaChip*

28  *Semiconductor Corp.*, 2016 WL 6902856, at *4-5 (N.D. Cal. Nov. 21, 2016) (approving similar

notice program); *Zynga*, 2016 WL 537946, at *7 (finding individual notice mailed to class members combined with summary publication constituted "the best form of notice available under the circumstances"); *In re HP Sec. Litig*. No. 3:12-cv-05980-CRB, 2015 WL 4477936, at *2 (N.D. Cal. July 20, 2015) (finding the procedures for notice, including mailing individual notice and publication notice satisfy Rule 23, the PSLRA, and constitute the best notice practicable).[8]

The contents of the Settlement Notice, which was approved by the Court in the Preliminary Approval Order and the Scheduling Order, provided the necessary information for Class Members to make an informed decision regarding the Settlement and contained all of the information required by Rule 23(c)(2)(B), the PSLRA (15 U.S.C. § 78u-4(a)(7)), and this District's Procedural Guidance for Class Action Settlements (the "Procedural Guidance").[9] The Settlement Notice informed Class Members of, among other things, (1) the nature of the Action and the claims asserted; (2) the definition of the Class; (3) the amount of the Settlement; (4) the reasons why the parties are proposing the Settlement; (5) the estimated average recovery per affected class member; (6) the maximum amount of attorneys' fees and expenses that will be sought; (7) the identity and contact information for the representatives of Lead Counsel who are reasonably available to answer questions from Class Members; (8) Class Members' right to opt out of the Class or to object to the Settlement, the Plan of Allocation, or the requested attorneys' fees or Litigation Expenses; (9) the binding effect of a judgment on Class Members; and (10) the dates and deadlines for Settlement-related events. Campisi Decl. Ex. A, ¶¶1-98. The Settlement Notice also contained the Plan of Allocation and provided Class Members with information on how to submit a Claim Form in order to be eligible to receive a distribution from the Net Settlement Fund. *Id.* ¶¶58-72.

---

[8] As set forth in the Mahn Decl., a relatively small number of mailings to potential Class members or nominees were returned as undeliverable or received an e-mail bounceback. *See e.g.*, Campisi Decl., Ex. H at ¶¶22 and 24.  The Mahn Decl. sets forth Epiq's efforts to locate updated contact information, yet some remain undeliverable.  This Court recognized in cases such as *Symantec* that a notice program satisfies Rule 23(c)(2)(B) even with a certain number of undeliverable notices, and noting the additional notice provided by websites and publication.  *See Symantec*, 2022 WL 409702, at *5-*6 (3,452 notice packets out of 169,578, or 2%, remained undeliverable).

[9] *See* https://www.cand.uscourts.gov/forms/procedural-guidance-for-class-action-settlements/ (last visited January 24, 2023).

1   In sum, the Settlement Notice fairly apprised Class Members of their rights with respect to

2   the Settlement and complied with the Procedural Guidance, the Court's Preliminary Approval

3   Order, the Federal Rules of Civil Procedure, the PSLRA, and due process.

4                                            **<u>CONCLUSION</u>**

5   For these reasons, Lead Plaintiffs respectfully request that the Court find the Settlement and

6   Plan of Allocation are each fair, reasonable and adequate, find that the Settlement Notice and its

7   manner of dissemination complied with Rule 23 of the Federal Rules of Civil Procedure, due

8   process and the PSLRA, and grant final approval of the proposed Settlement and approve the Plan

9   of Allocation.

10

11   DATED:  February 2, 2023                 Respectfully submitted,

12                                            **KAPLAN FOX & KILSHEIMER LLP**

13                                            By:   /s/ *Jeffrey P. Campisi*
                                                    Jeffrey P. Campisi

14
                                             Robert N. Kaplan (admitted *pro hac vice*)
15                                           Jeffrey P. Campisi (admitted *pro hac vice*)
                                             Jason A. Uris (admitted *pro hac vice*)
16                                           850 Third Avenue, 14th Floor
                                             New York, NY 10022
17                                           Telephone:     (212) 687-1980
                                             Facsimile:     (212) 687-7714
18                                           *rkaplan@kaplanfox.com*
                                             *jcampisi@kaplanfox.com*
19                                           *juris@kaplanfox.com*

20                                           **KAPLAN FOX & KILSHEIMER LLP**
                                             Laurence D. King (SBN 206423)
21                                           Kathleen A. Herkenhoff (SBN 168562)
                                             Blair E. Reed (SBN 316791)
22                                           1999 Harrison Street, Suite 1560
                                             Oakland, CA 94612
23                                           Telephone:     (415) 772-4700
                                             Facsimile:     (415) 772-4707
24                                           *lking@kaplanfox.com*
                                             *kherkenhoff@kaplanfox.com*
25                                           *breed@kaplanfox.com*

26                                           *Class Counsel for Lead Plaintiffs Julia Junge and*
                                             *Richard Junge and the Class*
27

28