**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| JULIA JUNGE and RICHARD JUNGE, on behalf of themselves and a class of similarly situated investors,<br><br>Plaintiffs,<br><br>v.<br><br>GERON CORPORATION and JOHN A. SCARLETT,<br><br>Defendants. | Case No. 3:20-cv-00547-WHA (DMR)<br><br>Class Action<br><br>(Consolidated with Case No. 3:20-cv-01163-WHA)<br><br>(Related to Case No. 3:20-cv-02823-WHA; 3:22-mc-80051-WHA)<br><br>[~~PROPOSED~~] ORDER APPROVING DISTRIBUTION PLAN |

Lead Plaintiffs moved this Court for an order approving a distribution plan for the Net Settlement Fund in the above-captioned securities class action (the "Action"). Having reviewed and considered all the materials and arguments submitted in support of the motion, including Lead Plaintiffs' Motion for Approval of Distribution Plan, and for Approval of Epiq Class Action and Claims Solutions, Inc.'s ("Epiq") Additional Fees and Expenses, and Memorandum of Point and Authorities in Support Thereof, and the Declaration of Stephanie Amin-Giwner in Support of Lead Plaintiffs' Motion for Approval of Distribution Plan, and in support of Epiq Class Action and Claims Solutions, Inc.'s Additional Fees and Expenses, dated December 15, 2023 ("12/15 Amin-Giwner Declaration"),

NOW, THEREFORE, IT IS HEREBY ORDERED THAT:

1. This Order incorporates by reference the definitions in the Stipulation and Agreement of Settlement, dated September 2, 2022 (ECF No. 247) ("Stipulation"), and the 12/14 Amin-Giwner, and all capitalized terms used in this Order shall have the same meanings as defined in the Stipulation and the 12/15 Amin-Giwner Declaration.

2. This Court has jurisdiction over the subject matter of the Action and over all parties to the Action, including all Class Members.

3. Lead Plaintiffs' plan for distribution of the Net Settlement Fund to Authorized Claimants is **APPROVED**. Accordingly:

    a. The administrative determinations of Epiq, the Court-approved Claims Administrator, to accept the Timely Eligible Submitted Claims stated in Exhibit AA-1 to the 12/15 Amin-Giwner Declaration and the Late but Otherwise Eligible Submitted Claims stated in Exhibit AA-2 to the 12/15 Amin-Giwner Declaration are adopted.

    b. The Claims Administrator's administrative determinations to reject the Rejected Submitted Claims, as stated in Exhibit AA-3 to the 12/15 Amin-Giwner Declaration are adopted.

    c. The Court has considered the request for judicial review of Epiq's recommendation to reject Claim No. 1543 and approves Epiq's determination to reject Claim No. 1543 because the Claimant has no Recognized Loss under the Plan of Allocation. *See Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 342 (2005).

    d. The Court approves Epiq Distribution Plan, as set forth in Paragraph 66 of the 12/15 Amin-Giwner Declaration, which provides for the following:

        (i) Epiq will conduct an initial distribution (the "Initial Distribution") of the Net Settlement Fund as follows: Epiq will calculate award amounts to all Authorized Claimants by calculating their *pro rata* share of the fund in accordance with the Plan of Allocation.

        (ii) Epiq will, pursuant Paragraph 70 of the Settlement Notice and to the terms of the Plan of Allocation, eliminate from the distribution any Authorized Claimant whose *pro rata* share of the Net Settlement Fund as calculated above is less than $10.00. Such Claimants will

not receive any distribution from the Net Settlement Fund and Epiq will send letters to those Authorized Claimants advising them of that fact.

        (iii)    After eliminating Claimants who would have received less than $10.00, Epiq will calculate the *pro rata* share of the Net Settlement Fund for Authorized Claimants who would have received $10.00 or more pursuant to the calculations described above ("Distribution Amount").

        (iv)    To encourage Authorized Claimants to deposit their payments promptly, all distribution checks will bear a notation: "CASH PROMPTLY. VOID AND SUBJECT TO REDISTRIBUTION IF NOT CASHED BY [DATE 90 DAYS AFTER ISSUE DATE]." For Authorized Claimants whose checks are returned as undeliverable, Epiq will endeavor to locate new addresses through reasonable methods, including processing undeliverable checks through an address trace service and contacting Claimants via email and/or by telephone. Where a new address is located, Epiq will update the Settlement Database accordingly and reissue a distribution check to the Authorized Claimant at the new address. In the event a distribution check is lost or damaged, or otherwise requires reissuance, Epiq will issue replacements. Distribution reissues will be undertaken only upon written instructions from the Authorized Claimant, provided that the Authorized Claimant returns the previous check where appropriate. For all checks, Epiq will void the initial payment prior to reissuing a payment. In order not to delay further distributions to Authorized Claimants who have timely cashed their checks, Epiq's outreach program shall end 30 days after the initial void date. Authorized Claimants will be informed that, if they do not cash their Initial Distribution checks within 90 days of the issue date, or they do not cash checks reissued within 30 days of the mailing of such reissued checks, their checks will lapse, their entitlement to recovery will be irrevocably forfeited, and the funds will be reallocated to other Authorized Claimants. Reissue requests for lost or damaged checks will be granted after the void date on the checks as long as the request for the reissue is received no later than 45 days prior to the next planned distribution. Requests for reissued checks in connection with any subsequent distributions (should such distributions occur) will be handled in the same manner.

        (v)    Authorized Claimants who do not cash their Initial Distribution checks within the time allotted or on the conditions set forth above will irrevocably forfeit all recovery from the Settlement. The funds allocated to all such stale-dated checks will be available for distribution to other Authorized Claimants, if Lead Counsel, in consultation with Epiq, determines that it is cost-effective to conduct a second distribution. Similarly, Authorized Claimants who do not cash their second or subsequent distribution checks, should such distributions occur, within the time allotted or on the conditions set forth above will irrevocably forfeit any further recovery from the Net Settlement Fund.

        (vi)    After Epiq has made reasonable and diligent efforts to have Authorized Claimants cash their Initial Distribution checks, which efforts shall consist of the follow-up efforts described above, Epiq will conduct a second distribution of the Net Settlement Fund (the "Second Distribution"), in which any amounts remaining in the Net Settlement Fund after the Initial Distribution will be distributed, in an equitable and economic fashion, to all Authorized Claimants in and who cashed their Initial Distribution check.

        (vii)    In order to allow a final distribution of any funds remaining in the Net Settlement Fund after completion of the Second Distribution, whether by reason of returned funds, tax refunds, interest, uncashed checks, or otherwise:

        (a)    If cost effective, after the Second Distribution is conducted, Epiq will conduct a further distribution of the Net Settlement Fund, in which all funds remaining in the Net Settlement Fund, will be distributed to Authorized Claimants who cashed their Second Distribution checks in an equitable and economic fashion. Additional re-distributions may occur thereafter until Lead Counsel, in consultation with Epiq, determines that further re-distribution is not cost-effective; or

        (b)    Any balance below $5,000 that still remains in the Net Settlement Fund after redistribution(s) shall be donated to a 501(c)(3) non-profit organization unaffiliated with Lead Counsel and to be approved by the Court.

        (viii)    No new Claim Forms may be accepted after January 25, 2024, and no further adjustments to Claim Forms received on or before January 25, 2024 that would result in

an increased Recognized Claim Amount, may be made after January 25, 2024.

(ix)     Unless otherwise ordered by the Court, one year after the Second Distribution, Epiq will destroy the paper copies of the Submitted Claims and all supporting documentation, and one year after all funds have been distributed, Epiq will destroy electronic copies of the same.

4.     The Court finds that the administration of the Settlement and the proposed distribution of the Net Settlement Fund comply with the terms of the Stipulation and Plan of Allocation approved by this Court and that all persons involved in the review, verification, calculation, tabulation, or any other aspect of the processing of the Claims submitted, or who are otherwise involved in the administration or taxation of the Settlement Fund or the Net Settlement Fund, are hereby released and discharged from any and all claims arising out of that involvement, and all Class Members and other Claimants, whether or not they receive payment from the Net Settlement Fund, are hereby barred from making any further claims against the Net Settlement Fund, Lead Plaintiffs, Lead Counsel, the Claims Administrator, the Escrow Agent or any other agent retained by Lead Plaintiffs or Lead Counsel in connection with the administration or taxation of the Settlement Fund or the Net Settlement Fund, or any other person released under the Settlement beyond the amounts allocated to Authorized Claimants.

5.     Epiq's request for additional fees and expenses incurred in the administration of the Settlement and estimated to be incurred in connection with the Initial Distribution of the Net Settlement Fund is approved, and Lead Counsel is directed to pay Epiq $___900,000___ out of the Settlement Fund to Epiq.

As stated on the record, all brokers are required to bear their own costs.  None of the above payment shall be used to reimburse brokers or cover any part of their submitted invoices.

6.     This Court retains jurisdiction to consider any further applications concerning the administration of the Settlement, and any other and further relief that this Court deems appropriate.

SO ORDERED this ___28___ day of _____May_____, 2024.

DATED: ___May 28, 2024___

_____
HON. WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE